Tilghman C. J.
(After stating the case.) Whether the note was evidence, is now the question : the Court of Common Pleas having admitted it, and a bill of exceptions having been taken to their opinion. I have no doubt that the note *370 was legal evidence, because nothing appeared on its face to render it void. If it was indeed void, it was owing to circumstances dehors the note, which might very properly be given in evidence after the note was read, and then the defendant’s counsel had a right to the Court’s opinion on the legal operation of the whole evidence. The objection to the legality of the note is founded on the act of 19th March, 1810, by which it was declared unlawful “for any associa- “ tion 'of persons who then were, or thereafter might be, con- “ nected for the purpose of banking, and who were not incor- “ porated by law, to make, utter, or issue any bills or notes “ in the nature of bank notes; to loan any sum of money up- “ on any actual or accommodation note, to receive any sum “ of money in the nature of deposits, or to do or perform any “ other act,which, an incorporated banking company may law- “ fully do:” and it is also declared unlawful “ for any person “ to make any deposit in any such bank, or to offer at any “ such bank, any note for discount.” The defendant’s argument is, that no court- of justice, in this state, will permit a recovery to be had by any person concerned in the drawing or indorsing of the note in question, the whole transaction being in- violation of the act of assembly. But it is evident, that before the Court can know any thing of the transaction, the note must be read, and on its face there is no illegality, being a note in the usual form, payable at a certain place^ viz. the Farmers’ Bank of Lancaster. Whether, upon a full disclosure of all the circumstances of this transaction, the" plaintiff would have been entitled to recover, we are not called upon to decide, nor do I think it proper to give an opinion. -
But some points have been discussed-.in the argument, concerning which it is necessary to express our.sentiments, lest it should be supposed that we entertain doubts, which might have an ill effect in the present situation of the country, as respects banking institutions. I do not understand that the counsel for the plaintiff denied the general right of the legislature to prohibit the formation of companies,'for the purpose of issuing bank notes, and carrying on the business of banking. Such a position would indeed be' too extravagant to bear an argument: the issuing of bank paper being a subject so immediately .and deeply interesting to the public, that it necessarily falls under the legislative controul. But. it is *371 contended that the operations of the “ Farmers’ Bank of Lancaster” were not suspended by the act of 19th March, 1810: 1st. Because it had been before incorporated by the legislature: 2d. Because the prohibition of its operations involved a violation of a contract, from which the state legislatures are restrained by the constitution of the United States. Each of these objections shall be considered :
1st. It is supposed, that “The Farmers’ Bank of Lancas- “ ter was virtually incorporated by the “ Act relating to the “ association of individuals for the purpose of banking,” passed 28th March, 1808. By this law it is enacted, that if any association of citizens should thereafter be formed for the purposes of banking, every member thereof should be individually and personally liable for the debts of the association. How this can be construed into an implied incorporation of the association, known by the name of “The Farmers’ Bank “of Lancaster,” formed the 17th January, 1810, I confess I am unable to conceive. I should draw an inference directly the contrary, because the personal responsibility of the stockholder is inconsistent with th,e nature of a body corporate,. The most that can be fairly inferred is, that the act is an acknowledgment, that such associations were lawful until prohibited by the legislature ; and so they undoubtedly were: but no one who recollects the history of the time can be at a loss to know the object, and intent of the law. Associations had been formed, and more were about to be formed, the members whereof endeavoured to shield themselves from personal responsibility, by publishing to the world, that they undertook to transact business on the express condition of being exempt from such responsibility. To put down these dangerous pretensions the act of assembly was made, and its plain import is directed to that, and no other object. How ,can it be supposed for a moment, that there should be an intention to incorporate associations, without number and with--GUt end, free from all restraint or limitation, when in no instance has a banking company been incorporated, before or since, without restrictions as to the amount of its capital, the nature of its,business, and'the extent of its duration. I forbear to enlarge on this subject, being fully satisfied, that nothing was farther from the intent of the legislature than to incorporate this or any other company, by the act which has been mentioned.
*372 2d. Let us next see how the objection stands, as to the violation of contracts. What contract would be violated by the SUSpensjon 0f the operation of this bank ? Supposing the prohibition to be confined to business, to be originated after the passing of the act, no prior contract between the bank and •thirdpersons would be affected. But it is said that the members had formed a.contract betzveen themselves, which would be dissolved by the stoppage of their business. And what then? Is that such a violation of contracts as is prohibited by the constitution of the United States ? Consider to what such a construction would lead. Let us suppose, that in one of the states there is no law against gaming, cock-fighting, horse-racing, or public masquerades, and that companies should be formed for the purpose of carrying on these practices. And suppose, that the legislature of that state, being convinced of the pernicious effect of these institutions, should venture to interdict them: will it be seriously contended, that the constitution of the United States has been violated ? And yet the contract between the members of these companies would be dissolved, because. it would no longer be lawful for them to carry on the business for which they had associated. Now so far as concerns the argument on the constitution, there is no difference between the cases supposed, and the case of banks ; though in point of decency and morality, the difference is very great. The legislature has a right to .take care of the public welfare, by prohibiting future acts which may be detrimental to the public ; and if,, from such prohibition it should happen, that prior engagements to performs such acts, should be dissolved, that would not be the violation of contracts, contemplated by the constitution. Thus much I have thought proper to say, to prevent misapprehension on a point of great importance. Upon the whole case, my opinion is, that the judgment should be affirmed.
Yeates J.
The associations of individuals for the purposes of banking, abstracted from the institutions of positive law, are innocent in themselves : and while their operations are restricted within a reasonable extent, are not injurious to the community. But it is obvious, that should the circulating medium of the country be inordinately increased thereby,, they would become great public evils. Experience hag taught us the melancholy truth, that excessive issues of bank *373 notes, even by chartered banks regulated by government, have caused solid coin to disappear, and have been attended ’ with the most pernicious effects. ' .
It has been contended, that the act of 26th March, 1808, has impliedly incorporated the association of the Farmers’ Bank of Lancaster, by subjecting the members thereof to individual responsibility for their notes, and that certain vested rights arose thereby, by which the faith of the legislature was plighted, and which could not constitutionally be taken away. My mind refuses its assent to the conclusions drawn on this subject, by the ingenious counsel of the defendant in error.
It is admitted, that this law was intended as an impediment to the proceedings of this association in their banking operations. But how can this be reconciled with the supposition, that it was virtually a solemn-contract entered into between the legislature and the association of individuals after-wards formed, that such associations might go on to any extent of capital stock and have perpetual duration without any controul whatever, or without paying any consideration to the government ? That such was not the intention of the legislature there can be little question. The act speaks of no incorporation, nor confers any powers or- privileges on such societies, but attaches a personal liability on the individual members, never known in the case of corporations. It could not be intended to place them on a more advantageous footing than the old chartered banks, which were in full operation : for it really put them in a more favourable situation. If the individuals of this association understood themselves to’ have been really incorporated by the law in question, it is passing strange, that they' should apply to the legislature in the sessions of 1811-1812 for a new charter, which was refused to- them ; and afterwards assent to receive the charter granted by the general law regulating banks, enacted 21st March, 1814, whereby their capital stock was restricted to 600,000 dollars ; their duration limited to 1st April, 182S j a proportion of their semi-annual dividends directed to be paid into the treasury ; the books and vaults of the company subjected to the inspection of committees of the legislature ; and a power reserved to the legislature to revoke and annul the charter and privileges granted by the act, in case it should appear that the same were injurious to the citizens of the commonwealth. - ■ ' •
*374 I have therefore no hesitation in saying, that the act of 26th March, 1808, had not the effect ascribed to it on the part of the defendant, and that the act of 19th March, 1810, was perfectly constitutional. It impaired no preceding contract, nor annihilated any vested rights: for none such existed. It was .prospective in its provisions, and was a measure of sound policy dictated by an honest regard to the public weal. Of course it became a valid law binding on all the citizens of the state, and until it was repealed, “ it was unlawful after “the 1st May, 1810, for any association of persons who then “ were, or thereafter might be connected for the purpose of “ banking, and who were not incorporated by law, to loan any “ sum or sums of money upon any actual or accommodation note or notes, or to do or perform any other act which an “ incorporated banking company might lawfully do.” Nor have I the smallest difficulty in declaring, that the courts of justice will not lend their aid for the recovery of money advanced against the provisions of a positive act of the legislature, and tending immediately to defeat it.
But the question before us is not whether the evidence given in the Court of Common Pleas would maintain the action, but whether the promissory note should- have been received in evidence. The bill of exceptions states, that the note was offered in evidence, which being objected to, the plaintiff below gave in evidence the testimony contained in the notes of the president, and then again offered the said note ; which being still objected to, as well as the said testimony, the Court over-ruled the objection, and admitted the said note to be read, and the testimony to be given. Whereupon, &c; It is strangely worded : because it appears thereby that the testimony annexed was received without opposition in the first instance, but was afterwards excepted to. The note was dated 10th November, 1812; drawn by the plaintiffs in error for 600 dollars, payable to Levi G. Hollingsworth., or order, without defalcation, at the Farmers' Bank of Lancaster, 60 days after date, and indorsed by Hollingsworth and the defendant in error. A statement and declaration .had been filed : the latter contained a count for money paid to the use of the defendants' below, upon which the verdict was taken. The action was not founded on the note which was merely inducement to the suit. It carried no illegality on the face of it:' and its'being made payable at the *375 Farmers’ Bank did not necessarily shew, that it was so penned in order, to obtain its- being discounted there. A stipu-' lation to pay money at noted places of public resort is usual in trading places. Why, therefore, should this note be refused in evidence ? How could the case between the parties be understood without its production? It appears to me unobjectionable that.the note should be seen and read both by the Court and jury. As to the other testimony, if we can go into the inquiry after its being received in evidence without opposition, it cannot be denied, that it was relevant to the issue: because it constituted the defence at law. It is unnecessary to declare my opinion, what would have been the legal operation of the whole testimony, if the case had come before us on a demurrer to evidence, or if the opinion of the Court of Common Pleas had been required as to the legal "result of the whole evidence, and the same had been filed of record under the act of assembly. It is sufficient to say, that I see no error as the case is presented to us on the bill of exceptions, and therefore, in my idea, the judgment of the Court of Common Pleas should be affirmed.
Brackenridge J, was sick and absent.
Judgment affirmed.