Graham vs. Parham.

---

GRAHAM VS. PARHAM.

1. FEDERAL COURTS: *Mandamus to levy taxes, etc.*

While it is true that the United States Circuit Courts can, under the rulings of the Supreme Court, compel county officers by *mandamus* to levy a tax authorized by the laws of the State to pay their judgments, they cannot compel them to levy a tax or do any other act not authorized by the Constitution and laws of the State.

2. ———: *Same.*

Sec. 9, art. xiv, of the Constitution, creates a limitation upon the taxing power of the counties, unless there be an exceptional case arising under prior contracts, and neither the Legislature or the State or Federal Courts can direct or force a county to make a valid levy in excess of such limitation. The collector, in attempting to collect such a levy, would be a trespasser, and no valid tax sale could be made under the warrant therefor.

3. PROSECUTING ATTORNEY: *Duties of.*

It is the official duty of the Prosecuting Attorney to defend suits brought in the Federal Court against a county embraced in his district.

4. COUNTY COURT: *Terms of; mandamus, etc.*

The County Court has no power to change or vacate its judgments or orders after the lapse of the term at which they are rendered, or to convene again before the time fixed for holding the next regular term, and no such power can be imparted to it by virtue of a writ of *mandamus* from the Federal Courts; it is not the office of the writ to impart power to the court, but to enforce the exercise of the powers conferred upon it by the laws of the State.

5. TAX LEVY: *To pay county indebtedness; how payable.*

The County Court levied a tax of five mills for the purpose of paying indebtedness existing at the time of the adoption of the Constitution, but on a subsequent day of the term modified its order and appropriated the whole of the levy to the payment of a judgment rendered against it in the Federal Court. Conceding the latter order to have been an error, it was not void for want of jurisdiction of the subject matter, and could only be corrected on appeal. Held, further, that the levy as originally made would have been payable in county warrants issued prior to the adoption of the Constitution, but under the modified order, so long as it remained unreversed, the tax was payable in currency.

APPEAL from *St. Francis* Circuit Court.

Hon J. N. CYPERT, Circuit Judge.

*Weatherford,* for appellant.

*Adams, contra.*

ENGLISH, CH. J.:

Graham, an owner of lots in Forrest City, and a tax-payer of St. Francis County, tendered to John Parham, collector, county warrants, or scrip, issued in 1873, in payment of a tax of five mills embraced in the warrant of the collector for the year 1876,

and styled "judgment tax." The warrants were refused by the collector, and Graham applied to the Circuit Court of St. Francis County, at the April Term, 1877, for a *mandamus* to compel him to receive them.

Parham entered his appearance, admitted the tender, and answered the petition. The cause was heard upon the pleadings, and transcripts of records made exhibits, and the court refuesd the *mandamus*, and Graham appealed.

It appears from a transcript of the record of the County Court exhibited with the petition, that on Monday, 9th of October, 1876, the court met pursuant to adjournment, present the County Judge, and a majority of the justices of the peace of the county, and made the following order:

"In conformity with section 1, of an Act of the General Assembly, etc., etc., approved December 14th, 1875 (Acts of 1875, p. 141). It is therefore ordered that the following rates per centum be and the same are hereby levied as a tax upon the real estate and personal property of the county, to-wit:

"For county general purposes one half of one per centum.

"For principal and interest on the county indebtedness, one half of one per centum.

"And it is further ordered that the amounts so collected by reason of such levy be and the same are hereby appropriated for the payment of the current expenses of the county generally; and the principal and interest of the indebtedness of the county existing at the time of the ratification of the Constitution, say October 30th, A. D., 1874.

"And it is ordered by the court that the clerk extend the tax as levied on the tax books of this county."

The following further order also appears in the transcript:

"County Court, October Term, 1876.

"Monday morning 10 o'clock, November 6th, 1876. Court met pursuant to adjournment, present and presiding, Hon. L.

Finley, judge, and the following justices of the peace of St. Francis County, viz: (here follow the names, thirteen in number), being a majority of all of the justices of the peace in the said county, etc., the following among other proceedings were had:

Stewart, Gwynne & Co. ⎫
      v.     ⎬ *Mandamus.*
County of St. Francis. ⎭

"Now, on this day, in obedience to a writ of *mandamus* issued from the United States District Court exercising jurisdiction for the Western District of Arkansas, at Helena, on the 14th day of October, A. D. 1876, and directed to and commanding this court to convene in session in the place appointed by law, and then and there levy a tax of one half of one per centum upon the assessed value of all the taxable property in this county for the year 1876, expressly for the purpose and to be applied towards the payment of a judgment rendered in said United States District Court in favor of Andrew Stewart and Andrew D. Gwynne, partners as Stewart, Gwynne & Co., against St. Francis County for the sum of $18,110.18, with interest at the rate of six per cent. per annum from the rendition thereof until paid, and the further sum of $240, costs of their suit. And it appearing to the court that there had been already a levy of one half of one per cent., made by this court for the year 1876, as provided by law, to pay principal and interest of the indebtedness of the county existing at the time of the adoption of the Constitution of the State, etc., and that the said levy had been so appropriated for the purpose indicated ; it is considered and ordered by the court that the said order of this court so levying and appropriating said one half of one per cent., etc., be and the same is hereby altered and amended so as to appropriate said levy of one half of one per cent. so made by this court in pursuance of law,

expressly for the purpose and to be applied towards the payment and satisfaction of said judgment, principal and interest, of Stewart, Gwynne & Co., as commanded in the aforesaid writ."

This tax was extended upon the tax book, and went into the warrant of the collection as "judgment tax, 50c.," and this is the tax which appellant offered to pay to the collector in warrants of the county issued before the adoption of the Constitution, and renewed on call, etc.

The petition questions the validity of the order of the County Court, made on the 6th of November, 1876, appropriating the whole of the levy made on the 9th of October, to pay indebtedness, etc., to the Federal judgment.

It appears from the answer to the petition, and transcripts exhibited therewith, that on the 11th day of October, 1876, Stewart, Gwynne & Co. recovered a judgment, by default, against St. Francis County, in the District Court of the United States for the Western District of Arkansas, sitting at Helena, for principal and interest due upon the instruments sued on, the sum of $18,110.18, the judgment to bear interest, etc., and for costs, etc.

It is recited in the judgment entry that inasmuch as it appeared to the court that all but a small fraction of the principal debt was due and payable prior to the 31st day of October, 1874, and that no execution could issue against the county, etc., and that a writ of *mandamus* directed to the County Court, etc., directing the levy of a tax upon the taxable property of the county was the only legal process which plaintiffs could have for the satisfaction of their judgment, etc., it was therefore ordered by the court that the County of St. Francis be required, on or before 2 o'clock in the afternoon of the 14th of the present October to show cause why a *mandamus* should not be issued commanding the County Court of said county forthwith to levy a tax upon the taxable property in said county sufficient to satisfy the

Graham vs. Parham.

judgment, and that the clerk of the court at once make out, under the seal of the court, a transcript of the judgment and order in duplicate, one of which to be served by the marshal upon the presiding judge of said County Court, and to make his return upon the other, etc.

How or where a copy of this judgment and order was served on the presiding judge of the County Court does not appear, nor does the final order of the United States Court awarding the peremptory *mandamus* appear in the transcript before us.

A copy of the first writ, however, appears to have been made an exhibit to the answer to the petition. It recites the judgment and that the costs, including the issuing of the writ, had been taxed at $240.80, and then proceeds thus : "And whereas it hath appeared to our said court, in answer by the said county to a rule served upon it in that regard, that no sufficient cause hath been shown why a peremptory mandamus should not be issued from our said court requiring you, the said County Court, to levy a tax of one-half of one per cent. upon all the taxable property in said county to be paid when other taxes are to be paid in said county in the year 1877, and for the purpose and to be applied toward the payment of said judgment as appears to us of record in our said court; these are therefore to command you that putting aside all excuse and matters of delay whatsoever, you do on the first Monday in November, 1876, convene in session in the place appointed by law for you to hold sessions of your court, and being then and there so convened in session, you do levy a tax of one-half of one per cent. upon the assessed value of all the taxable property in said county for said year, expressly for the purpose, and to be applied toward the payment of the judgment of our said court, principal, interest and costs."

The writ bears date 14th October, 1876, and is directed to the County Court of St. Francis County.

Graham vs. Parham.

I.  Two days before the judgment of the District Court was rendered, and four days before the peremptory mandamus was awarded, the County Court had levied one-half of one per cent. to pay indebtedness existing at the time of the adoption of the Constitution, and appropriated the amount to be collected from the tax for the payment of such indebtedness; yet the District Court imperatively ordered the County Court to make a special levy of one-half of one per cent. expressly for the purpose of paying its judgment.  Had the County Court obeyed the mandate, the two levies would have amounted to one per cent. upon the assessed value of the taxable property of the county, for one year, to pay indebtedness existing before the adoption of the Constitution.

The counsel of the parties are agreed that the judgment of Stewart, Gwynne & Co., was recovered upon the warrants, or scrip, of the county, issued before the adoption of the Constitution, and appellant being the holder of like scrip, the debts were of the same grade, both ordinary indebtedness.

We have the impression, there being nothing in the record to the contrary, that the presiding judge of the County Court, failed to inform the District Court, in response to the alternative writ of mandamus, that the County Court had already levied a tax of one-half of one per cent. to pay indebtedness existing at the time of the adoption of the Constitution, and appropriated it accordingly, and thereby exhausted its constitutional levying power for such purpose.  We cannot believe that if the District Judge of the United States had been properly advised of the existing facts in the premises, he would have made an order with which it was legally impossible for the County Court to comply.

We stated in *Vance* v. *The City of Little Rock*, 30 Ark., 450, that the Supreme Court of the United States had decided that a Circuit Court of the United States had jurisdiction to compel

officers of a State, by mandamus, to levy a tax to pay its judgments; but the Supreme Court did not reach this conclusion with unanimity ; on the contrary in *Riggs* v. *Johnson County*, 6 Wallace, 200, there was an able dissenting opinion by Justice Miller, in which Chief Justice Chase and Justice Grier concurred. The majority of the court, however, have adhered to this ruling, and so long as such shall be the opinion of that Supreme National Tribunal, we are bound to respect it, unless Congress shall think proper to intervene, and, by appropriate legislation, prohibit the Circuit Courts from exercising this jurisdiction.

But while such has been the ruling of the Supreme Court, not one case can be found in which that court has decided that a Circuit Court, or a District Court exercising Circuit Court jurisdiction, can compel a State County Court, by mandamus, to levy a tax, or do any other act, which it is not empowered by the Constitution and laws of the State to do.

" It is very plain," (said Justice Strong in *Supervisors* v. *United States*, 18 Wallace, 77), " that a mandamus will not be awarded to compel county officers of a State to do any act which they are not authorized to do by the laws of the State from which they derive their powers. Such officers are creatures of the statute law, brought into existence for public purposes, and having no authority beyond that conferred upon them by the author of their being. And it may be observed that the office of a writ of mandamus is not to create duties, but to compel the discharge of those already existing."

In *United States* v. *County of Clark*, 5 Otto, 773, which is the latest decision of the Supreme Court of the United States on this subject, which has come to our notice, Justice Strong, delivering the opinion of the court, said: " It need not be said that no court will by mandamus compel county officers of a State to do what they are not authorized to do by the laws of the State.

A mandamus does not confer power upon those to whom it is directed. It only enforces the exercise of power already existing, when its exercise is a duty."

We disclaim any right, as we did in *Vance* v. *The City of Little Rock*, to review, as a court of errors, the judgments of the Circuit or District Courts of the United States; beyond the right to enquire whether the court rendering such judgment, coming before us incidentally, had jurisdiction of the subject matter. The province of reviewing the judgments and correcting the errors of the inferior courts of the United States, appertain to the Supreme Federal Tribunal, and not to this court.

But we claim it to be a right and a duty to interpret our own Constitution and laws; and in local concerns, so long as they do not conflict with the Constitution and laws of the United States, they are supreme; and the courts of the United States have no power, nor can we think they have the disposition to disregard or trample upon them.

We should deplore any conflict between the State and Federal courts, and discountenance any attempt to prejudice the people of the States against the national courts. They are not foreign courts, but tribunals of justice provided for by the Constitution and laws of our country, and necessary and useful in their spheres. And from the organization of the Federal Government down to the present time, the judges of the national courts (with a very few recent exceptions), have been men of learning, profound judgment, and uprightness of conduct. And in the exceptional cases the men who soiled their judicial robes were driven from the bench, by public sentiment, to avoid impeachment.

Sec. 9, art. xvi., of the Constitution provides that: "No county shall levy a tax to exceed one-half of one per cent. for all purposes; but may levy an additional one-half of one per

cent. to pay indebtedness existing at the time of the ratification of this Constitution."

This section of the Constitution furnishes the measure of, and the limitation upon the taxing power of the counties, and neither the legislature, nor the State courts; nor the Federal courts, can direct or force a County Court to make a valid levy in excess of the limitations here prescribed.

There may be an exceptional case, as we indicated in *Vance* v. *City of Little Rock,* arising under the provision of the Constitution of the United States, which declares that no State shall pass any law impairing the obligation of contracts, but the case now before us is not shown to be of that character.

The County Court did not obey the mandamus of the District Court by making a special levy of one-half of one per cent. for the express purpose of paying its judgment as commanded, but in order to avoid punishment for contempt on the one hand, and to keep within its constitutional limits on the other, resorted to the ingenious devise of appropriating the whole of the half per cent. levy which it had previously made to pay debts of the county generally, to the satisfaction of the judgment mentioned in the mandamus.

Had the court made an additional levy of one-half of one per cent., making the whole levy one per cent. to pay debts, the collector would have been a trespasser in attempting to collect it, and no valid tax sale could have been made under his warrants.

It was the official duty of the prosecuting attorney of the judicial circuit embracing St. Francis County, to defend the suit of Stewart, Gwynne & Co. against the county in the United States District Court (Gantt's Dig., sec. 4839); and perhaps if he had done so, he might have shown that the scrip on which the suit was founded, had been issued greatly in excess of the value of the claims on which it was based, such having been a prevalent

illegal habit during the period in which it appears the scrip was issued.

It was also the duty of the presiding judge of the County Court, in response to the alternative writ of mandamus, to advise the District Court that a levy of one-half of one per cent. had been made before the service of the writ, to pay the indebtedness existing at the time of the adoption of the Constitution; and then if the court had (but we cannot believe it would) insisted on awarding a peremptory mandamus to compel an additional levy for that year, the prosecuting attorney should have applied to the Supreme Court of the United States for a writ of prohibition, or taken an appeal or writ of error, according to the proper practice in such cases.

But if a Circuit or District Court of the United States, award a peremptory writ of mandamus to compel a County Court to levy a tax not only unauthorized by law, but forbidden by the Constitution of the State, and no one on behalf of the county takes a writ of error or appeal to the Supreme Court of the United States from the order of the Inferior Court awarding the writ, or otherwise obtains prohibition against its issuance or execution, and the members of the County Court levy the tax in obedience to the mandate of the writ, in order to avoid punishment for contempt, can it be true that because the writ is issued by a court of the United States, its effect is not only to deprive the tax-payers of the right of appeal from the order of the County Court making the levy, but to paralyze the Superior Courts of the State, so that they are powerless to review the order and pass upon its validity in any of the modes provided by the Constitution and laws of the State? We do not deem it necessary to do more in this case than to state the proposition, in order that it may become the subject of judicial thought.

II.   The mandamus peremptorily commanded the County Court of St. Francis County, to convene in session, on the first Monday of November, 1876, in the place appointed by law, and being then so convened, to levy a tax of one-half of one per cent. etc.

If the court was not authorized by law to convene on the day named in this writ, it could not legally convene on that day by virtue of the mandate, because it was not the office of the writ to impart power to the court, but to enforce the exercise of power conferred upon it by the laws of the State.

If the writ could empower the court to convene at a time not authorized by law, it could also empower it to meet at a place not appointed by law.   We think the writ was impotent to do either.

The meeting together of the judge and officers of a court, at the place, but not at the time fixed by law for holding the court, is not a court, under our Constitution and laws, but is a mere collection of officers, whose acts must be regarded as *coram non judice* and void.   *Brumley* v. *State,* 20 Ark., 77 ; *Dunn* v. *State,* 2 Ark., 229.

"The terms of the County Courts shall be held at the times now prescribed for holding the Supervisor's Courts, or may hereafter be prescribed by law."   Sec. 31, art vii., Constitution.

Sec. 79 of an Act approved 5th February, 1875, (Acts of 1874-5), provides:   "That the regular terms of the County Courts in the several counties in this State, shall commence on the first Mondays in January, April, July and October, of each year, and shall continue as long as the business shall require," etc.

Sec. 28 art. 7, of the Constitution prescribes the jurisdiction of the County Courts; and the last clause of the section provides that:   "The County Courts shall be held by one judge, except in cases otherwise herein provided."

Sec. 29 of the same article prescribes the qualifications and mode of electing the jndge of the County Court; and sec. 30 provides that:

"The justices of the peace of each county shall sit with and assist the County Judge in levying the county taxes, and in making appropriations for the expenses of the county, in the manner to be prescribed by law; and the County Judge, together with a majority of said justices, shall constitute a quorum for such purposes; and in the absence of the County Judge a majority of the justices of the peace may constitute the court, who shall elect one of their number to preside. The General Assembly shall regulate by law the manner of compelling the attendance of such quorum."

The Act of 14th December; 1875 (Acts of 1875, p. 142), provides that: "The County Judge, with a majority of the justices of the peace of each county, shall constitute a court in levying the taxes and making appropriations for the expenses of the county; and the first and subsequent days of the fourth annual term of each court, as established by law, shall be the time fixed for such levying, and shall be constructive notice to each justice of the peace, etc., etc.

The time, therefore, fixed by law for the County Court of St. Francis County, composed of the County Judge and a majority of justices of the peace of the county, to convene and levy taxes and make appropriations for the year 1876, was on the first Monday of October of that year, and it had power to remain in session and adjourn from day to day until the business for which it convened was completed.

When any court of this State, whose terms are fixed by law, finally closes a term and adjourns until the next term, it cannot legally convene again until its next term, in the absence of a statute authorizing it so to do. *Dunn* v. *State*, 2 Ark., 252.

If, therefore, the County Court of St. Francis County, as composed of the County Judge and justices of the peace, had completed the business for which it convened at the October Term, 1876, and finally adjourned for the term, before the service of the writ of *mandamus* upon the members of the court, it could not legally convene again until the time prescribed by law, and there was no virtue or force in the writ to empower it sooner to convene. No power on earth but the legislature of the State could authorize it to convene.

This court may, by *mandamus*, compel a Circuit Judge to hold a term of his court, at the time prescribed by law, but certainly not at a different time. Trapnall, *ex parte*, 6 Ark., 9.

When this court finally closes a term, and adjourns to the next term, it has never claimed the power to convene again until the time prescribed by law, though it exercises the power common to all courts (when not forbidden by law) of adjourning from one day to another distant day during a term. *Mechanic's Bank* v. *Withers*, 6 Wheaton, 106.

Moreover, if the County Court, as composed of the judge and justices of the peace, had completed its business and finally dissolved for the term, before the service of the writ of *mandamus*, it had no power, on reconvening on the 6th of November, to reverse its order of 9th of October appropriating the half per cent. levy to the payment of debts generally, and apply the whole tax to the satisfaction of the judgment of the United States Court, to the exclusion of all other creditors. The County Court, like the other courts of the State, has no power to vacate, or change its judgments or orders after the lapse of the term at which they are rendered. *Reiff et al.* v. *Conner et al.*, 10 Ark., 241.

We have been referred to *United States* v. *Vernon County*, 3 Dillon, 283, as an adjudication that a County Court may be

44

compelled by *mandamus*, to meet at any time, out of term, and make a special levy to pay a judgment of a United States Court.

In that case Judge Dillon said: "Our ordinary course is not to require a special assessment, and levy at a special and arbitrary time, but to have the tax levied and collected with the general annual levy. Such special levy can then be made on the books and collected without much additional expense or trouble, and in the exercise of its discretion the court aims to avoid all unnecessary severity and useless costs. Some delay may thereby be occasioned to the creditor, but in theory of law, he is compensated therefor by interest. This is the method we have taken and carried out in all cases.

"When we have the right to order a special levy, we do not hesitate to do so, if it becomes necessary; but if the respondent appears and gives satisfactory assurance that the requisite amount will be embraced in the general levy, and that sufficient will be appropriated therefrom by a proper order to pay the particular debt, in such case a special levy may be dispensed with. We are governed by the circumstances of each case."

At the conclusion of the opinion, the following order was made: "Let an order go for a peremptory writ on respondent to levy at the next April Term, a special tax, at the time when the general annual levy is made for county purposes, to pay the judgment."

With the greatest respect for the opinion of this eminent jurist, we prefer to treat what the court ordered in the case as the judicial precedent, rather than what the learned judge said the court might do.

We do not know whether the laws of Missouri authorize the County Courts of that State to meet at any time, out of term, to make tax levies or not, but we do know that the County Courts of this State are powerless to make such levies except at and

during the term prescribed by law. *Chaplin* v. *Holmes*, 27 Ark., 414.

If the court had finally closed its term, and dissolved before the 6th of November, 1876, the judge and justices of the peace then convened were as powerless to make a valid tax levy or appropriation as so many dead men would have been, and a galvanic battery would have been more effectual to quicken and empower them to utter an order than a writ of *mandamus*, whether issued by a State or Federal Court.

We cannot, however, positively affirm from the record before us in this case, that the County Court, as composed of the judge and justices of the peace, had closed its sittings at the October Term, 1876, and finally dissolved, before the writ of *mandamus* was served, and that it did not convene on the 6th of November upon its own adjournment to that day.

The first entry in the transcript of the record before us is that of Monday, 9th of October, 1876, and it shows that the court met pursuant to adjournment, present the County Judge, and a majority of the justices of the peace, and that the court made the levies and appropriation first above copied.

In the absence of any showing in the record to the contrary, we must presume, in favor of the regularity of the proceedings of the court (*Borden* v. *State*, 11 Ark., 519), that it convened on the first Monday of October, the time prescribed by law, and adjourned to the second, or that there not being a quorum present on the first day of the term, there was an adjournment from day to day until a quorum was present, as provided by law. Acts of 1875, p. 142.

The entry of the 6th of November, above copied, also shows that the court met pursuant to adjournment, present the County Judge and a majority of the justices of the peace, and then the matter of the *mandamas* was taken up, and acted on.

An amendment to the transcript filed since the submission of the cause, by agreement of the parties, shows some meetings and adjournments of the court intermediate to the 9th of October and the 6th of November, when the County Judge only was present, but what was done at such meetings, other than to meet and adjourn,. does not appear, and there is an absence of any showing that the court, as composed of the County Judge and justices of the peace, had finally dissolved before the 6th of November, and that the justices of the peace, as members of the court were *functus officio*.

III.    No doubt the County Court felt constrained by the mandamus, in order to avoid being in contempt, to appropriate the whole of the levy of one-half of one per cent. which it had made at a previous day of the term, to the payment of the judgment of the United States Court, to the exclusion of all other creditors.

Is it right or just for a Federal court to invade the financial policy of the State, and by mandamus compel a County Court to levy and appropriate the whole tax which it has power to levy for any one year to pay debts existing at the time of the adoption of the Constitution, to the satisfaction of a judgment which it has rendered in favor of a non-resident creditor, to the exclution and postponement of the claims of all resident creditors ?

Why is it that a county can be sued in a Federal court at all ? It is because a statute of the States makes counties corporations, and empowers them to sue and be sued in any court.   Gantt's Dig., ch. 285.

But for this statute a county could not be sued at all, because by the common law a county can no more be sued than an unincorporated town, township, or judicial district.    *Lyell* v. *The Board of Supervisors of St. Clair County*, 3 McLean, 580 ;  2 Term Rep., 667 ;  7 Mass., 187 ;  2 Serg. & Rawle, 371.

Why is it that an execution cannot be issued upon a judgment of a United States Court, against a county, and the court house, jail, poor house and gallows (which is about all the property our counties own), be levied on and sold? It is because a statute of the State forbids an execution against the lands and other property belonging to a county. Gantt's Dig., sec. 950.

Perhaps in the absence of a statute forbidding it, such property could not be sold upon execution; being devoted to public uses, the sale of it would interfere with the administration of the government of the State. *City of Chicago* v. *Harley*, 25 Ill., 595; 31 New York, 164, 193.

Why is it that when a judgment is recovered in a court of the United States against the administrator or executor of a deceased debtor, an execution cannot be issued upon it, and his estate sold to satisfy it, regardless of the claims of local creditors? It is because the policy of the State requires all claims against the estate of deceased persons to be probated, allowed and classed in the Probate Courts, and paid by the administrators or executors out of the assets of such estates, in the order of their classes, and if there are not sufficient assets to pay the whole of any class of claims, they are to be paid *pro rata*, and no creditor is permitted to have an execution against an estate. Gantt's Dig., ch. 1. And the Supreme Court of the United States has decided that this policy cannot be invaded by the issuance of an execution upon the judgment of a Federal court. *Yonley* v. *Lavender*, 21 Wallace, 279.

Mr. Justice Davis, who delivered the opinion of the court, said: "To sustain it (the sale under execution), would be in effect to nullify the administration laws of the State, by giving to creditors out of the State greater privileges in the distribution of estates than creditors in the State enjoy. It is easy to see, if the non-resident creditor, by suing in the Federal courts of

Arkansas, acquires a right to subject the assets of the estate to seizure and sale for the satisfaction of his debts, which he could not do by suing in the State courts, that the whole estate, in case there were foreign creditors, might be swept away. Such a result would place the judgments of the Federal courts on a higher grade than the judgments of the State courts, necessarily produce conflict, and render the State powerless in a matter over which she has confessedly full control. Besides this, it would give to the contract of a foreign creditor, made in Arkansas, a wider scope than a similar contract made in the same State by the same debtor with the home creditor. The home creditor would have to await the due course of administration for the payment of his debt, while the foreign creditor could, as soon as he got his judgment, seize and sell the estate of his debtor to satisfy it, and this, too, when the laws of the State in force when both contracts were made, provided another mode for the compulsory payment of the debt. Such a difference is manifestly unjust, and cannot be supported."

The appellant and Stewart, Gwynne & Co. were holders of warrants, or scrip as they are commonly called, issued upon the Treasurer of St. Francis County, upon claims audited and allowed by the County Court before the adoption of the present Constitution. We say audited and allowed by the County Court, because it is the appropriate province of the County Court to audit all claims payable out of the county treasury, except in cases where the legislature has made special provision for the auditing of particular demands by other officers. *Jefferson County* v. *Hudson*, 22 Ark., 595.

County warrants shall be redeemed and paid by the County Treasurer in the order of their number and date, and no warrant shall be thus paid until all of a prior date are paid, provided the County Treasurer upon whom the warrants are drawn, shall not

be able to meet all demands upon the treasury.    Acts Dec. 17, 1846, sec. 2; Gantt's Dig., sec. 1042.

If appellant could have sued upon his warrants at all (which the statutes do not seem to contemplate), he could not have sued in a Federal court, because he was a citizen of this State, and so was St. Francis County, according to the interpretation by the Federal courts of the word " citizen " as used in the Constitution of the United States.

If he had sued upon his warrants in. a State court, and obtained a judgment, he simply would have marched up the hill and then marched down again, for the statute provides that: " When judgment shall be rendered against any county, it shall be the duty of the County Court to order a warrant to be drawn on the County Treasurer for the amount of the judgment and costs, which warrant shall be paid as other county debts." Gantt's Dig., sec. 949.

No State court would have compelled the County Court, by mandamus, to exhaust its levying power for any one year, and appropriate the whole levy, if required, to pay his judgment, to the exclusion of all other creditors.

But Stewart, Gwynne & Co., being citizens of Tennessee, obtained judgment in the District Court of the United States, sitting at Helena, against the county, and a mandamus was awarded them to compel the County Court to make a special levy of one-half of one per cent., all the court had power to levy for that year, to pay debts, to be applied in satisfaction of their judgment, to the exclusion of all other creditors of the county.

We repeat, is it right or just for a Federal court so to invade, by mandamus, the financial policy of the State, in reference to which all the creditors of counties have contracted? We leave the Supreme Court of the United States to answer the question.

The view that we take of this case is, that the County Court, on one day of its October Term, 1876, levied a tax of one-half of one per cent. to pay debts existing at the time of the adoption of the Constitution, but appropriated the tax to the payment of no particular debt.   On a subsequent day of the term, the court modified its order, and appropriated the whole tax to the payment of a judgment rendered in the District Court of the United States, after the first order was made.   Conceding this to have been an error, the order was not void for want of jurisdiction of the subject matter, and no appeal having been taken from the order by appellant, or any other creditor of the county, the Circuit Court could not review the order, and reverse it for error in this proceeding.

But we come finally to the question, whether appellant had the legal right, notwithstanding the order, to pay so much of the tax as was charged upon his property, in warrants issued before the adoption of the Constitution, and which he tendered to appellee, and he refused to accept?

Upon any claim allowed against a county, the clerk of the County Court is required to issue to the claimant a warrant upon the County Treasurer. Sec. 505, Gantt's Dig.; Acts of 1874-5, p. 144.

All warrants drawn upon the treasurer must be paid out of any money in the treasury not otherwise appropriated, or out of the particular fund expressed therein, "and shall be received irrespective of their number and date, in payment of all taxes and debts accruing to the county." Gantt's Dig., sec. 610.

If the order made by the County Court on the 9th of October, 1876, appropriating the tax of one-half of one per cent., on that day levied, to the payment of the indebtedness of the county existing at the time of the adoption of the Constitution generally, had not been modified by the order of 6th of November

appropriating the whole of the levy to the satisfaction of the judgment of Stewart, Gwynne & Co., the appellant would have had the right to pay so much of the tax as was charged upon his property in the warrants issued before the adoption of the Constitution, which he tendered to appellee, as collector. Acts of 1875, p. 151; *Loftin* v. *Watson, ante.*

But sec. 11, art. 16, of the Constitution, provides that "no moneys arising from a tax levied for one purpose shall be used for any other purpose."

The judgment of Stewart, Gwynne & Co. was necessarily payable in currency, and though the order of 6th of November invaded the legal right of appellant to pay the tax in his warrants, yet we cannot see how the collector could receive them while the order stood unreversed, and, as we have seen, could not be treated as null and void.

The judgment of the court below must therefore be affirmed.