WHITE v. ARKANSAS & MISSOURI HIGHWAY DISTRICT.

Opinion delivered January 24, 1921.

1. HIGHWAYS—INFRINGEMENT OF JURISDICTION OF COUNTY COURT.— Acts Nos. 23, 25, and 356, of the Special Session of 1920, providing for construction of lateral roads in the Arkansas and Missouri highway district within Pulaski County, in providing that if any portion of said roads have not been laid out as a public road, the county court of Pulaski County, if approved by it, shall lay the same in the manner provided by Acts 1911, No. 442, do not infringe upon the jurisdiction of the county court by attempting to authorize the laying out of new roads without the approval of the county court.

2. HIGHWAYS—VALIDITY OF ACTS AUTHORIZING LATERAL ROADS.—The above mentioned acts in effect create three new highway districts, and are void, since they provide no machinery for making assessments.

Appeal from Pulaski Chancery Court; J. E. Martineau, Chancellor; reversed.

R. E. Wiley and Marvin Harris, for appellant.

1. Acts 23, 25 and 356, of the Special Session of 1920, as also act 82 of 1919, are void. The proposed improvement does not constitute a single local improvement, and the unity of the district is destroyed by these acts, and they are void. 50 Ark. 116, 129; 89 Id. 513-16. The

legislative determination that the improvement is a single one and local in its nature is not conclusive in this case. 130 Ark. 307.

2. The cost will exceed the limits allowed by law.

3. All these acts invade the jurisdiction of the county court. Article 7, § 28, Constitution 1874; 138 Ark. 549; 141 *Id.* 247.

*Cohn, Clayton & Cohn, amici curiae.*

The acts are unconstitutional and void.   89 Ark. 513; 218 S. W. 389, 392-3; 138 Ark. 549; 92 *Id.* 93; 91 *Id.* 274; 138 *Id.* 549; 139 *Id.* 153-341; 141 *Id.* 247.

*Coleman, Robinson & House,* for appellees.

1. The unity of the district is not destroyed, and the acts are not void.   95 Ark. 496; 216 S. W. 1047; 218 *Id.* 381.   See, also, 213 S. W. 762; 209 *Id.* 81; 130 Ark. 507.

2. The costs will not exceed the limits allowed by law.

3. Section 15 of act 82 was complied with, and the decisions of our court sustain the decree.

SMITH, J.   Appellant is a landowner in the Arkansas and Missouri Highway District in Pulaski County, and seeks by this suit to enjoin the commissioners of that district from constructing certain lateral roads authorized by the terms of acts 23, 25 and 356 of the Special Session of the General Assembly of 1920.   The original district was created by Act No. 82 passed at the regular 1919 session, and the contention is made that the unity of the district is destroyed by acts 23, 25 and 356, and that these acts are therefore void.

There were other acts amending act 82, but we need not consider them here, as the prayer of the complaint is that "the defendant district be enjoined from the construction of any of the roads laid out in the acts in reference to said district except the road known as the Jacksonville cut-off, which is being properly constructed under the terms of the act and which will carry out the purposes for which the district was organized."   So

that the acts attacked are acts Nos. 23, 25 and 356, and those only need be considered.

A brief has been filed by *amici curiae,* more extensive in its scope, but the questions for decision can not thus be enlarged.

Two of the amendatory acts which are presented for review contemplate the construction of lateral roads all of which had not previously been laid out as a public road by the county court, and it is insisted that the acts are void on that account. But in each of those acts there is a provision that "if any portion of said road has not been laid out as a public road, the county court of Pulaski County, if approved by it, shall lay the same out in the manner provided by act No. 422 of the Acts of the General Assembly of the State of Arkansas of the year 1911, entitled, An Act to amend section 7327 of Kirby's Digest of the Statutes of Arkansas, approved May 31, 1911."

We think there is no infringement of the jurisdiction of the county court by attempting to authorize the laying out of new roads and improving them without the approval of the county court. The language quoted negatives that idea, and it affirmatively appears from the pleadings that the new roads were laid out and established by appropriate orders of the county court. We think there was no legislative intent to control the jurisdiction of the county court in laying out these roads by depriving it of its discretion. The Legislature only provided for the manner of the exercise of the jurisdiction in laying out the new roads, which was, of course, a proper thing for it to do, as the proceedure in any and all of the courts is subject to legislative control and regulation.

The purpose of act No. 82, as declared in the first section thereof, "is to secure the construction of a highway running from the city of North Little Rock, Arkansas, through the counties of Pulaski, Lonoke, White, Jackson, and connection with the Alicia and Walnut

Ridge Highway on the Lawrence County line at or near Alicia, thereby giving a through route to the Missouri line. * * *" To promote that purpose four improvement districts were organized by act No. 82, one for Pulaski County, one for Lonoke County, one for White County, and one for Jackson County.

This act was reviewed and upheld by us in the case of *Van Dyke* v. *Mack,* 139 Ark. 524.

Act 23 of the special session provides for the construction of the lateral road known as the Tate's Mill road, and section 3 of the act provides that the cost thereof shall be borne entirely by all quarter sections of land north of the Arkansas River some part of which is within five miles of the road, and that no property south of the Arkansas River nor any quarter section of land north of the Arkansas River no part of which is within five miles of said lateral shall pay any part of the actual construction cost.

Act 25 of the special session provides for what is called the East Ninth Street lateral, and section 2 of that act provides that the cost thereof shall be borne entirely by property within the city of north Little Rock and by all quarter sections of land north of the Arkansas River some part of which is within five miles of the road, and that no property south of the Arkansas River nor any quarter section of land north of the Arkansas River no part of which is within five miles of said road shall be taxed.

Act 356 is substantially identical in its provisions in regard to the lateral which it authorizes to be constructed.

Section 1 of act 23, after describing the lateral to be constructed, if approved by the county court, concludes with this sentence: "Said road shall be built under all the terms and conditions of said act No. 82, or other acts amending same, and in such manner as the commissioners of the district deem best, provided, that the commissioners shall grade said road and shall only

pave said road as the commissioners deem best with the funds available.''

The other two acts are substantially identical in this respect, and there is no other authority in any of them for making assessments.

The territory specifically exempted in each act from contributing to the cost of building the lateral roads there provided for is included in the Arkansas and Missouri Highway District of Pulaski County as constituted by act No. 82. So that we have, in effect, a legislative declaration that a part of the lands in the district shall be exempted from contributing to the construction cost of a part of the proposed improvement. Such exemption could be made upon the theory only that all the lands in the district would not be benefited by all the improvements in the district. This manifestly was the basis of the exemption.

It is obvious that there was no legislative declaration or purpose of furthering the plan to build an improved highway from Little Rock to the Missouri line in passing acts 23, 25 and 356. These laterals could never be a part of that scheme, as they branch out from the main line practically at right angles. If all the improvements were constructed, and a traveler should mistake one of these laterals, he could only go about six miles on one, and a shorter distance on the others, when he would reach the end of the lateral and would have to retrace his course to the junction with the main road, when he could again pursue his journey.

We do not mean to say that the General Assembly might not have authorized a single improvement district to construct, as one improvement, the main line and these laterals. We have sustained numerous legislative acts which did authorize both a main road and laterals: but in all of those cases we assumed there had been a legislative finding that there was such unity of trade, commerce, social and business intercourse, and interests.

as to make the whole improvement beneficial to the whole district which was to bear its cost.

Here there is a legislative declaration to the contrary and a positive inhibition against assessing certain lands in the district for certain improvements in the district.

It is alleged in the complaint that the commissioners of the district created by act 82 are about to issue bonds in the name and against the credit of all the lands in the district, the proceeds of which will be used to construct all the roads authorized by all three of the amendatory acts mentioned. The truth of this allegation is admitted; and, if this is done, who can know that no money will be spent on the laterals which will not be repaid by taxation imposed on lands outside those districts but which are in the original district. The bond issue will be secured by all the property in the district, yet the proposed improvements are so diverse that the very acts creating them provide that a portion of the district of which they are to be a part shall pay nothing for their construction.

It is admitted that there has been but one assessment. The assessment against the lands in the lateral districts is a unit. The assessment as returned does not reflect what benefit is assessed for the laterals as distinguished from the main road. It is admitted the assessment was made as a unit, but it is contended that the betterments were separately assessed. But the amendatory acts provide no machinery for making assessments. The language last quoted refers to the construction work and authorizes the commissioners to build the laterals in such manner as act No. 82, or any act amending act No. 82, may provide, but there is a lack of authority in the amendatory acts for making assessments. The property owner is entitled to know how much he is taxed for each improvement, so that he may complain against any part which he thinks is excessive. Yet here an assessment is made under the provisions of act 82 both for the improvement provided for in act 82 and for the im-

provements provided in the amendatory acts, and this, despite a legislative finding that all the lands in the district will not be benefited by all the improvements proposed, in all the legislation.

We think a fair construction of this legislation is that more than one improvement district has been created. As to each of these laterals there is a legislative declaration that only certain portions of the original district shall contribute to their cost. Yet the whole improvement is to be built as a unit. The entire betterment is assessed as a unit. There is to be but one contract for the construction of the improvement.. For some purposes there is but one district; for some other purposes there are four districts.

These amendatory acts are not sufficiently definite to stand alone. No machinery is provided under which these laterals can be constructed unless they are to be treated as being an enlargement of the original improvement, and, as we have shown, the inhibition in regard to assessments negatives that idea.

In the respect just stated the case is not unlike that of *Easley* v. *Patterson,* 142 Ark. 52. There a provision of the act construed reads as follows: "Said board of commissioners are further required to, upon the petition of 51 per cent. of either a majority in number. acreage, or valuation of property owners in any defined district or part of Benton County not now included in this act, asking that additional territory be embraced in this district for the purpose of building or improving any road or roads not now included in this district, it shall be the duty of said board of commissioners to include said territory in said improvement district, and to assume jurisdiction over it, and to proceed to build, maintain and to construct a public road or roads as is herein provided in this act."

It was there contended that the section quoted (which was section 8 of act 238 of Special Acts of 1919, vol. 1, Special Road Acts 1919, p. 935), rendered the en-

tire statute void. We held that section void, and, in doing so, said: "It is difficult to discover the meaning of the lawmakers from the language used in this provision. It does not provide merely for the change of boundaries for the purpose of including laterals or changes in the route of the road, for that is provided for in another section. Giving the language the force which its use necessarily implies, it seems to confer authority for the creation of entirely new districts; but it is ineffectual for that purpose, for the reason that there is no provision made in the statute for the assessment of benefits and the levy and collection of taxes for that purpose. The section is entirely inoperative, and is therefore void. * * *"

We also said that striking down the section quoted did not render the entire act void, because it was there provided that the fact that any section might be found unconstitutional should not affect the remaining portions of the statute. We think these amendatory acts are void for the reason given in the case of *Easley* v. *Patterson,* quoted above, and, being void, the prayer of the complaint should have been granted, and the decree of the court below will be reversed and the cause remanded with directions to enjoin the commissioners from the construction of these laterals as a part of the proposed improvement.

The decree of the court below will, therefore, be reversed and the cause remanded with directions to enter a decree in accordance with this opinion.

WOOD and HART, JJ., concur.

McCULLOCH, C. J. (dissenting.) I dissent from the conclusion of the majority on the ground that acts No. 23, 25 and 356 are sufficiently definite to authorize the construction of laterals as independent improvements with the cost to be assessed against the lands found to be benefited, and that the case does not fall within the

rule announced by this court in *Easley* v. *Patterson*, 142 Ark. 52.

Section 1 of act No. 23 provides that the laterals "shall be built under all the terms of said act No. 82 and other acts amending the same." The language expressly confers the power to build the road and refers to another statute for the method and machinery and brings it squarely within many of our decisions. *School District* v. *School District*, 102 Ark. 411.

The exclusion of the lands from the original district created by act 82 from the assessment of benefits to construct the laterals shows that the lawmakers intended to make the laterals independent improvements, and, as before stated, I think that adequate provision is made for separate assessments for the purpose of constructing those independent improvements.

Now the effect of these three statutes is to join the lands described in those statutes to the original district, but there is no objection to doing this, if it is sufficiently expressed in the new statute, and I think it is expressed with sufficient definiteness in each instance. In other words, I think that the new statutes constitute findings on the part of the lawmakers that the lands added to the original district will be benefited by the construction of the original improvement and may be added so as to share in the cost, but that the additional improvements provided for under those statutes will not result in benefits to lands in the original district and those lands are to be excluded from the additional assessments to pay for the laterals. I see no reason why the Legislature can not adopt this form of authorizing the additional improvement and adding the same lands to the old district upon the finding that they will be benefited by the original improvement. If the commissioners of the district are exceeding their authority by joining the improvements together and commingling the funds, they may be restrained from so doing without impairing the force and validity of the statute itself. In other

words, they can be compelled to carry out the terms of the statute, instead of evading or disregarding them. *Phillips* v. *Tyronza and St. Francis Road Improvement District,* 145 Ark. 487.