### SLAYTON v. CRITTENDEN COUNTY, ARK.

(District Court, E. D. Arkansas, W. D.    December 5, 1922.)

No. 2102.

1. **Equity** ⊕⇒427(1)—**Decree must conform to issues and prayer.**

A decree must conform to the scope and object of the prayer, and cannot go beyond them, and must be responsive to the issues tendered by the pleadings.

2. **Mandamus** ⊕⇒10—**Cannot require action by officer not authorized by statute.**

Under Const. Ark. art. 16, § 10, and the statutes of the state, which permit payment of county taxes in county warrants, neither federal nor

---

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

state court can require a county by mandamus to levy a tax payable in currency to satisfy a judgment rendered against it on county warrants.

3. Receivers ⊚⟹14—Appointed only when necessary to protect rights of party.

A receiver may be appointed only in extraordinary cases, when absolutely necessary for protection of the rights of the party asking it.

4. Receivers ⊚⟹14—Case held not to present ground for appointment of receiver.

In an action against a county on warrants issued in payment for a bridge, the fact that the contract gave the holders a lien on the bridge and authorized them to take possession and charge tolls, on default in payment of the warrant, *held* not ground for appointment of a receiver to take charge of the bridge and collect tolls, to be fixed by the court, in the absence of any allegation that the county had refused to surrender possession.

5. Bridges ⊚⟹33—Court cannot authorize collection of tolls for use of public bridge.

A court of equity is without power to fix and order collection of tolls for use of a public bridge, in the absence of a state statute expressly authorizing it, and tolls cannot be exacted from the public unless so authorized.

6. Bridges ⊚⟹33—Statute held not to authorize court to fix tolls.

Crawford & Moses' Dig. Ark. §§ 10255, 10256, 10260, authorizing county courts to grant privileges to build and operate toll bridges and turnpikes, and to fix the tolls for their use, confer no authority on a federal court of equity to fix tolls to be charged for use of a bridge built by a county.

7. Bridges ⊚⟹7—Cannot be enjoined from building bridge.

Crawford & Moses' Dig. Ark. § 10258, providing that, when a county has granted a franchise for a toll bridge, it shall not grant a like privilege to any other person, does not prevent the county itself from building another bridge for free use of the public.

8. Counties ⊚⟹225—County judge in Arkansas cannot consent to decree against county establishing rights unauthorized by law.

A county judge of a county of Arkansas has no authority to consent to a decree against the county establishing rights unauthorized by law.

In Equity. Suit by W. L. Slayton against Crittenden County, Ark. On application for entry of consent decree. Denied.

Thos. S. Buzbee, George B. Pugh, and H. T. Harrison, all of Little Rock, Ark., for plaintiff.

Rudolph Isom, of Marion, Ark., and A. B. Shafer, of Memphis, Tenn., for defendant.

TRIEBER, District Judge. This is an action praying for a decree against the county for $120,872.50 due on unpaid county warrants or scrip issued by the defendant for the construction of a bridge by the assignors of the plaintiff. The prayer of the complaint is that the judgment be declared a lien on the bridge, and, if the amount awarded is not paid within a time specified, that the lien be foreclosed. The plaintiff and the county, the latter acting by its county judge and attorneys, filed a stipulation and presented a form of a decree granting the plaintiff a judgment for the amount claimed and costs, appointing a receiver to take charge of the bridge and operate the same as a toll bridge, establishing the tolls the receiver is to charge for the use of the bridge by the public, and in addition enjoining the defendant county from providing any additional bridge or viaduct connecting with the

⊚⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Harrihan bridge across the Mississippi river (the warrants having been issued for the erection of a bridge by plaintiff's assignors, connecting with the Harrihan bridge) until plaintiff's judgment is fully paid and satisfied.

It will be noticed that the stipulation and the consent decree presented to the court provide for relief that plaintiff does not ask in his complaint. There is nothing in the prayer for relief, nor is there any averment in the complaint, asking for a receiver, or that, if a receiver is appointed, he be authorized to collect tolls; that this court establish the tolls to be charged by the receiver, nor that the defendant county be enjoined from providing any additional bridge connecting with the Harrihan bridge across the Mississippi river.

Plaintiff's cause of action is based on a contract made by his assignors with the defendant county, the material provisions of which, as far as necessary to a determination of the questions to be determined at this time, are contained in a supplemental contract between the parties, executed at the same time the contract for the construction of the bridge was made, and made a part thereof. They read:

"Article 4. It is further agreed and said county does hereby agree and promise to pay the contractor, Ball & Peters, the principal sum and contract price of one hundred forty-seven thousand dollars ($147,000.00) in Crittenden county warrants, without interest, at the times and in the manner here set out and shown. Said warrants, aggregating one hundred forty-seven thousand dollars ($147,000.00), shall be issued in amounts, and become due and payable to the contractor in installments as follows, to wit: [It then sets out the list of warrants.]

"It is hereby agreed and understood that said contractor, or his assigns and successors in interest, will not make demand of said county or its county treasurer for the payments of any of the deferred payments and installments of the contract price above referred to, to be evidenced by future warrants, prior to the time of the date due and for the amounts hereinabove set out and shown. Said warrants shall show dates of their maturity on their face: Provided, however, that if so much as three thousand dollars ($3,000.00) of said contract price shall remain unpaid for thirty days after maturity, then in that event the whole sum remaining unpaid shall become due and payable at the option of the owner of said three thousand dollars ($3,000.00) portion of said debt past due and unpaid, and all warrants shall fall due and become payable at once.

"It is further agreed by said county that the sums of money in the foregoing installment shall be paid promptly at the times and dates above set forth, and that said amount at the proper time shall be voted and appropriated by the quorum or levying court of said county and set apart in lawful money out of the county revenue and the special bridge tax fund, which said county hereby agrees to levy and create annually hereafter; but, in event there shall be no special tax revenue available or sufficient for the purpose of paying said sums of money as they fall due, and the county warrants which may be issued to represent and evidence said installments accordingly as any of said warrants are presented to the county treasurer for payment, then and in that event said county hereby agrees to pay said installments and warrants evidencing them, out of the general fund of the county, or any other money in the county treasury not otherwise appropriated, and until said bridge debt shall be fully paid, and said contract and bridge debt, and the warrants representing them, are hereby declared to be a special charge against said special tax fund, and also the general obligation of Crittenden county, Arkansas, and if the road tax shall have been levied and collected after having been voted, it shall be a special charge against such road tax.

"Article 5. And whereas, the contract price and consideration for the

erection of bridges by counties in the state of Arkansas may be made payable by installments, as provided by law and the decisions of the Supreme Court of the state of Arkansas, by virtue of which statutes and decisions of the Supreme Court the said county has made this contract and ordered the contract price broken into installments falling due and payable at the time and for the sum and in the manner herein provided:

"Therefore, it is further agreed that said county and its county court shall have prepared and signed at the expense of the county, not to exceed the sum of two hundred dollars ($200.00), as evidence of the said several annual installments and representing the said contract price shown herein, a sufficient amount of Crittenden county, Arkansas, bridge certificates and county warrants drawn upon the county treasurer of Crittenden county, Arkansas, and signed and sealed with proper seal by the clerk of county court and attested and countersigned by the county judge. Said warrants and certificates shall be divided into denominations and amounts and have such forms and contain such recitals in their face as provided by law and satisfactory to the contractor. There shall be bridge certificates numbered from 1 to 106, both inclusive, with proper number of county warrants annexed thereto, being in denominations of $1,000.00, $500.00, $55.00, and $27.50, and one of $1,677.50 of demand warrants as hereinbefore set forth. Said warrants shall not bear interest. They shall be made payable at the office of the county treasurer of Crittenden county, at the city of Marion, Arkansas. Said warrants shall be in form as provided by law, but shall have such recitals in their face as to fully show the purpose of their issues, and shall be signed and sealed as provided by law. Said warrants shall have the following numbers and mature in the installments as follows, to wit: [Here follows a list of the warrants, giving their numbers, amount, and date of maturity.] All of which foregoing warrants, upon their presentation and surrender at the county treasury, shall be fully and promptly paid in lawful money as any of them shall become due and payable at the times above specified.

"Said warrants, when signed and delivered to the contractor, shall represent the contract price, and shall be delivered to the contractor upon certificates of the commissioners, which certificates shall declare that the said warrants have been respectively earned. The delivery of said warrants or any of them by the county to the contractor, his assigns or transferees, shall be in their hands, or the holders for value of any of said warrants, conclusive evidence of the performance by the contractor of the proportionate part of its entire obligation under this contract as represented by the warrants so delivered; and the said delivery of the said warrants to the contractor shall be a waiver by the county and county officials, and all taxpayers or other persons, of all defense of whatsoever nature which said county or county officials, or other persons, firms, or corporations, may interpose to the payment of said warrants: Provided, however, that if at any time before final completion of the bridge any latent or concealed defect in the work or material should be found in the bridge, the same shall be replaced and made good by the contractor; and also a waiver by said foregoing named parties of any objection that they may have to the county's right to levy the said special tax of three-fourths and two mills per annum on all the taxable property in said county for the payment of said warrants, or so much of said tax as may be necessary, and of the county's right and duty to make sufficient appropriation each year by the levying court of said county for the payments of said warrants and the contractor represented by them from year to year; and said county hereby declares and agrees that said warrants, when issued and delivered to the contractor, shall be in every way valid and binding obligations on Crittenden county and the special tax fund created for their payment.

"Article 6. And, conforming to the necessity the county finds requisite in making of this contract, it is further agreed that said warrants shall pass by delivery merely, and, to the extent of cutting out equities and defenses in the hands of innocent purchasers for value, said warrants shall be negotiable instruments according to law; and no neglect, omissions, irregularity, informality, or technicality on the part of the county or county officials or the contractor shall in any way affect, reduce, or make null and void this contract

and the county warrants which may be issued to represent said contract price after said warrants have been delivered to the contractor, and all of said warrants shall be receivable by the county for all debts and taxes as provided by law, when due.

"Article 7. All of said warrants shall be duly registered by the clerk of the county court and by the county treasurer, as provided by law, against the special bridge tax fund of said county, and he shall give a certified copy thereof, showing the warrants so registered. It is further understood and agreed that the loss or destruction of any of said warrants shall not affect the validity of the debt they represent, or the obligation of the county and treasurer to pay the same, but said lost or destroyed warrants shall be duplicated by the county and county court, as per section 1465, Kirby's Digest, and, when duplicated, the duplicates shall be as binding as the original thereof. The certificates of the commissioners approving the contractor's claim and the county court allowance of any of said warrants shall be recorded on the minutes of the county court and certified copies furnished by the contractor, and after the court has received said bridge from the contractor, or when said warrants representing the contract price have been delivered to the contractor, when the facts recited in said warrants and in the certificates of the engineer and the commissioners and the court's order of allowance, whether recorded or not, shall be final and conclusive as to the facts therein stated; and the county court officials and all others attempting to reduce, or prevent the payment of, or make void, said warrants shall be estopped, and shall not be heard to deny the truth thereof or the validity of said warrants after their delivery to the contractor.

"Should the county fail or refuse to make partial payments justly due within five (5) days after due to the contractor during the progress of the work herein provided, or any of them, at the time and in the manner provided in this agreement, then the contractor shall be entitled to stop all work and refuse to supply the labor and material called for hereunder without incurring penalty for delay or otherwise until all payments justly due him are fully paid, and if after thirty days' notice by the contractor, any payments, justly due him shall remain unpaid, then the contractor shall be entitled to stop operations permanently and recover from the county by suit or otherwise the proportionate part of the contract price represented by the work executed and the true estimate profit on the remainder of the work unfinished. If the county should terminate the employment of the contractor, then it shall have the right to issue the warrants whom it may employ to finish the work or to the surety of the contractor or in any legal form the county may elect to use.

"Article 9. The contractor shall hold and retain exclusive control and possession of said bridge, and the ground upon which same is erected, and all improvements, until all the warrants due and deliverable to the contractor by the county have been duly delivered to it, and the final delivery of warrants to the contractor shall be made to him in thirty days after the bridge is completed. It is further agreed that a first or prior vendor's or builder's lien on said bridge described above is hereby created, granted to, and retained by the contractor, his assigns, or the holders for value of said warrants, to secure the payment of said warrants in lawful money, and said bridge is hereby declared to be personal property, and said vendor's or builder's lien shall not be satisfied or destroyed or in any way impaired until all of said warrants shall have been fully paid in lawful money; and it is also understood and agreed that upon the failure or refusal of said county to pay any of said warrants as they become due the contractor or his assigns may take possession of said bridge and operate it as a toll bridge, until all past-due and outstanding warrants have been paid in lawful money, making such toll charges as may be reasonable and equitable.

"Article 10. It is further agreed by and between the parties that the said county, by and through its county court and its county quorum or levying court, shall levy a special annual bridge tax of three-fourths (¾) mill on the dollar on all taxable property of said county, or more, if necessary, for and during each of the years 1916 to 1919, both inclusive, and two (2) mills for the years 1920 to 1925, both inclusive, and for and during each year there-

after, if necessary, until the warrants herein provided for shall have been fully paid in lawful money of the United States, and for the purpose of raising funds sufficient to pay the sum of money by the county at the time herein agreed to be paid to said contractor for the erection of said bridge for said county. It is further agreed and understood that the money and revenue derived from said special tax as annually levied, or so much thereof as may be necessary to meet payments as herein provided, shall become a special fund in the hands of the county treasurer to be known and styled as the special bridge fund, and when levied and collected shall be used and exclusively applied by the county treasurer to the payments of said contract price, and the county warrants drawn on said fund as provided by section 11, article 16, of the Constitution, and said county hereby sells, transfers, and assigns to the said contractor, his successors and assigns, and the holders for value of said warrants, all of said special levy of three-fourths (¾) mill on the dollar tax for and during each of the years 1916 to 1919, and two (2) mills on the dollar tax for and during each of the years 1920 to 1925, both inclusive, or so much thereof as may be necessary to meet the payments as herein provided, and grants said contractor the right to have special tax levied by the quorum court from year to year and appropriated for its use; and the money, when collected, is hereby assigned and transferred for the purpose herein set out and shown.

"It is further agreed that after the completion of said bridge said county will maintain and carry a policy of insurance on said bridge against all such casualties as fire, wind, lightning, and cyclone, in good solvent insurance companies, to the amount of fifty thousand dollars ($50,000.00), and until all of said warrants have been fully paid; and in the event the said bridge should be destroyed or damaged, the money due on said policy or policies of insurance shall become the money and property of the contractor or the holder of the warrants herein provided for, and said money shall be paid unto the county treasurer as a fund for redemption of said warrants, or the reconstruction of the damaged part. It at any time the county shall fail or refuse to keep said bridge duly insured as heretofore specified, then the contractor or the holder of said warrants may insure the same to the extent heretofore specified, and the county hereby agrees to reimburse the contractor or holder of said warrants for all the premiums so paid out by him or them. In the event the said county court should make an order calling in for reissue the warrants herein provided for, as per section 1175 of Kirby's Digest, a notice of said order shall be duly given to the contractor and his assigns of record by registered mail at their post office address thirty days before the order calling in said warrants for reissue shall be made; and when the order calling in said warrants for reissue or otherwise shall be made by said county, then the county shall approve said warrants hereby authorized and declare same to be a binding obligation upon said county and legally insured. And in the event the same shall be reissued, said warrants shall be of the same denomination and amounts as the warrants hereinbefore referred to, and said warrants shall be identical in form, sums, and amounts, and shall be drawn upon the same fund, and shall never be canceled or reduced, and said county shall pay all cost of reissuing said warrants: Provided, however, that if the holder of such warrants so elects all outstanding warrants will become due and payable immediately. It is further agreed that, should any suit be brought by any taxpayer or any person, officer, firm, or corporation, by injunction or appeal or certiorari from any order made by the county court of said county, or otherwise against said county or its county officers or said contractor or the holder of said warrants, for the purpose of impairing, reducing, defeating, or delaying the performance of this contract, or the collection of the money represented by the county warrants issued pursuant thereto, then the county court of said county and said county shall defend all such suits, and shall employ and pay competent counsel to defend all such suits, and shall allow the contractor or the holder of said warrants all such costs and attorney's fees as shall be reasonable in the collection of said warrants, or in the defense of said suits, and pay all expenses of such suits of whatever nature and kind, in addition to the contract price herein agreed upon, and no statute of limitations shall

ever be imposed to the payment of said warrants of said bridge debt, or lien which said county may make for the purpose of securing the payment of said warrants. All of said warrants, when delivered to the contractor, or any of them shall be free of all defense of whatsoever nature by the county, and shall be binding obligations on Crittenden county, Arkansas.

"Article 11. It is hereby agreed and understood by the parties hereto that the contractor named herein shall have the right to assign, sell, and transfer to any person, firm, or corporation any and all the warrants issued by said county to said contractor in payment of the contract price arising out of and accruing by virtue of this contract, and all rights and interests in any property which may be pledged to secure the payment of said warrants, and to subrogate said transferees, assigns, or holders for value of any of said warrants to all the rights, titles, demands, liens, privileges, debt, or claim which may· have accrued to or may belong to said contractor under this contract or which may have been given to the contractor by said county, and all of said rights shall be exercised by the assigns or holders for value of any of said warrants. This agreement is a continuing contract between the county and said contractor. The agreement made this date is referred to and made a part of this contract, the same as if fully written herein; but these contracts and agreements made this day supersede all other agreements made by the undersigned with the county in conflict herewith. It is agreed that this contract and everything pertaining thereto and in reference to said bridge businesss shall be accurately recorded upon the minutes of the county court of the said county.

"If the contractor fails or refuses to complete said bridge by the time herein agreed, he shall forfeit to said county the sum of ten dollars ($10.00) for each day said bridge remains uncompleted, subject to credit for time provided in the original contract this day entered into between the parties."

It is proper to state here that a number of taxpayers of the county filed an intervention, objecting to the decree consented to by the county judge, and which the court is asked to render. This intervention had been filed without notice to the plaintiff, who moved to strike it out. The intervention charged in general language fraud and conspiracy of persons not parties to the suit, nor asked to be made parties by the interveners, without stating any facts which would constitute a defense to the plaintiff's action. The court sustained the motion and struck the intervention from the files in the case.

The questions to be determined now are whether the court should, by consent of the parties, the county judge consenting for the defendant county, render a decree and grant relief, although no such relief is asked in the complaint.

(1) Shall the court appoint a receiver to take possession of the bridge or viaduct constructed by plaintiff's assignors?

(2) If the receiver is appointed, can this court authorize him to collect from the public tolls for the use of it and establish what the tolls shall be?

(3) Can this court grant an injunction restraining the county from constructing an additional bridge to connect with the Harrihan bridge?

[1] The proposed decree consented to by the parties contains all of these provisions. In the opinion of the court it cannot do so, and, if it does, the decree would be a nullity. The settled law is that averments without proof and proofs without averment are alike unavailing, and that the decree must conform to the scope and object of the prayer and cannot go beyond them. The Hoppet, 11 U. S. (7 Cranch) 389, 394, 3 L. Ed. 380; Washington R. R. v. Bradley, 77 U. S. (10 Wall.) 299, 303, 19 L. Ed. 894; Reynolds v. Stockton, 140 U. S. 254, 265, 11

Sup. Ct 773, 776, 35 L. Ed. 464; Hill v. Ryan Grocery Co., 78 Fed., 21, 27, 23 C. C. A. 624. In Reynolds v. Stockton, it was held:

"The invalidity of the judgment depends upon the fact that it is in no manner responsive to the issues tendered by the pleadings. This idea underlies all litigation. Its emphatic language is that a judgment, to be conclusive upon the parties to the litigation, must be responsive to the matters controverted."

Whether the fact that the warrants sued on herein have been issued by the county under the provisions of the statutes of the state in force long before and at the time they were issued, digested in C. & M. Digest of the Statutes of Arkansas as sections 1993, 1999, 2000, 2001, 2007, 2008, 2028, 2029, 2030, and 2033, entitles the owner of such county warrants to payment other than by the issuance of new warrants, is at best doubtful. In Graham v. Parham, 32 Ark. 676, 695, Chief Justice English, delivering the opinion of the court, in construing the foregoing sections of the statutes of the state, said:

"If he [the creditor who had obtained judgment on such warrants in the federal court] had sued upon his warrants in a state court and obtained a judgment, he simply would have marched up the hill and then marched down again, for the statute provides that 'when a judgment shall be rendered against any county it shall be the duty of the county court to order a warrant to be drawn on the county treasurer for the amount of the judgment and costs, which warrant shall be paid as other county debts.' * * * No state court could have compelled the county court by mandamus to exceed its levying power for any one year and appropriate the whole levy, if required, to pay his judgment, to the exclusion of all other creditors."

[2] That a court of the United States or a state court cannot require a county, by mandamus, to levy a tax payable in currency to satisfy a judgment against it on such warrants, is well settled. United States ex rel. v. Miller County, 4 Dill. 233, Fed. Cas. No. 15,776, decided by Judges Dillon and Caldwell in the Circuit Court of the United States for this district, and United States ex rel. v. Criner, 283 Fed. 774, decided by the United States Circuit Court of Appeals for the Eighth Circuit, opinion filed September 11, 1922. Both cases arose under the laws of the state of Arkansas.

[3] It is elementary that courts of equity will not appoint receivers for the mere asking. At least this court will not do so. Even when consented to by the defendant, when there is no warrant of law for such a consent, by the person consenting. A receiver may only be appointed in extraordinary cases, when absolutely necessary for the protection of the rights of the parties asking it, one who is entitled to the rents and profits of the property, or for the purpose of protecting from spoliation or some other extraordinary cause, and there is no adequate and complete remedy at law. There is no allegation in the complaint that the county court of the county has not levied annually the special tax it obligated itself to levy by article 5 of the supplementary agreement. All that is claimed is that the tax was not collected in lawful money, which, as has been stated, the county may not do under the laws of the state. In Stillwell v. Jackson, 77 Ark. 250, 93 S. W. 71, it was held that, if the county court requires in its levy for general purposes that a certain part of it, levied for a special purpose,

be paid in currency, any holder of county warrants may compel the collector to accept them in payment of the taxes, notwithstanding the levy provided that it be collectable in currency only.

[4] What allegations or provisions in the contract make it necessary to have a receiver? Article 9 of the supplementary agreement, after declaring that the contractors and their assigns shall have a lien on the bridge for the payment of the warrants, which bridge is declared in the contract to be personal property, provides:

"It is also understood and agreed that, upon the failure or refusal of said county to pay any of said warrants as they become due, the contractors or their assigns may take possession of said bridge and operate it as a toll bridge until all past-due and outstanding warrants have been paid in lawful money, making such toll charges as may seem reasonable and equitable."

It is not alleged in the complaint, nor was it claimed in argument, that, upon the default in the payment of the warrants, demand for the possession of the bridge was made by the plaintiff and by the county refused. On the contrary, it appears from the stipulation of the parties and the proposed decree presented to the court that the county consents to more than the plaintiff in his complaint asks. It is therefore reasonable to presume that, had a demand been made, possession of the bridge would have been surrendered by the county. Why, then, is it necessary to appoint a receiver? Courts do not decree useless relief.

[5] The consent decree submitted to the court fixes the tolls to be charged by the receiver. What right has a court of equity to fix tolls, in the absence of a state statute authorizing it? All the authorities agree, not only that courts, unless expressly authorized by the laws of the state, have no power to do so, but it is equally well settled that no tolls can be exacted from the public for crossing a public bridge, unless expressly authorized by a statute of the state. 9 C. J. 447.

[6] The only statute of the state relied on by the parties, and in using the word "parties" the court refers to the attorneys for the plaintiff and defendant, each insisting that the court can establish tolls and authorize its receiver to collect them, and grant all the relief set out in the proposed decree, is section 10255, C. & M. Digest of the Statutes of Arkansas. That section reads:

"The several county courts, through whose counties runs any water course, lake, bay or swamp which may be too burthensome to bridge and keep in repair by the inhabitants thereof, are hereby fully and exclusively empowered to grant privileges to persons to build toll bridges over, or turnpikes or causeways along the same, or through any overflowed or wet land, whenever the interest of the county or of the traveling public shall, in their discretion, demand such improvements."

As the court construes that section, the power to grant the privilege to build a toll bridge is vested exclusively in the county court of the county, which, under the Constitution and laws of the state, is the administrative and fiscal agency for the county. Section 10256 of the Digest provides:

"The county courts shall have a general superintending control over such bridges and turnpikes, and they are hereby required to fix the rate of toll for crossing any bridge, causeway or turnpike which may be built under the

provisions of this act, and to compel the same to be kept in good repair at all times."

Section 10260 makes it a misdemeanor, punishable by a fine of $50 for each separate offense, for "asking or demanding more of any person or persons for crossing such toll bridge * * * or turnpike than has been allowed him by the county court." This court is clearly without power to grant or establish tolls.

[7] The next question is: What right has this or any other court of equity to enjoin the county from building another bridge, if so inclined? Section 10258, C. & M. Digest, relied on by the parties consenting to the decree, prohibits, after this privilege has been granted to one, the granting of a like privilege to any other person. Assuming, without deciding, that the contract between the parties grants to the plaintiff the privilege of collecting tolls, there is nothing in this statute or any other prohibiting the county from constructing another bridge on which no tolls are to be charged. United Railroads v. San Francisco, 249 U. S. 517, 39 Sup. Ct. 361, 63 L. Ed. 739. This statute only prohibits the granting of the privilege to charge tolls to another, after one franchise to do so has been granted. Statutes granting franchises of this nature must be strictly construed, and nothing is taken by implication. Knoxville Water Co. v. Knoxville, 200 U. S. 22, 33, 26 Sup. Ct. 224, 50 L. Ed. 353; Piedmont P. & L. Co. v. Graham, 253 U. S. 193, 194, 40 Sup. Ct. 453, 64 L. Ed. 855; District of Columbia v. Andrews Paper Co., 256 U. S. 582, 587, 41 Sup. Ct. 545, 65 L. Ed. 1103. Even if it be assumed that the county could by contract have estopped itself from doing so, there is nothing in the contract whereby the county bound itself not to build another bridge, if it desires to do so, if no tolls are to be charged for the use of it by the public.

[8] So far as the consent of the county judge to the decree is concerned, the court is of the opinion that a judge cannot consent to a decree establishing rights unauthorized by law. It is too well settled to require the citation of authorities that counties, being merely sub-agents of the state, possess only such powers as the laws of the state have conferred on them, and the powers of a county judge are limited to the same extent. To consent to a decree unauthorized by law is beyond the powers of a county judge, or any other authorities of the county. In Kelly v. Milan, 127 U. S. 139, 160, 8 Sup. Ct. 1101, 1111 (32 L. Ed. 77), the facts were: The mayor of the town of Milan, in an action by the town to declare bonds issued by it to be void, had consented to a decree declaring them valid. Thereafter an action was instituted against the town on these bonds, and this decree was pleaded as an estoppel against the town to attack the invalidity of the bonds. It was held:

"The adjudication in the decree cannot, under the circumstances, be set up as a judicial determination of the validity of the bonds. * * * This was not * * * a submission to the court of a question for its decision on the merits, but it was a consent in advance of a particular decision, by a person who had no right to bind the town by such a consent, because it gave life to invalid bonds, and the authorities of the town had no more power to do so than they had to issue the bonds originally."

The appointment of a receiver, the establishment of tolls on the bridge, and an injunction against the county to prevent the building

of an additional bridge, as set out in the proposed consent decree, although the complaint does not charge that the county is threatening to build such a bridge, are denied.