**FILBERT et al. v. ARKANSAS & MISSOURI HIGHWAY DIST.**

(District Court, E. D. Arkansas, W. D. October 23, 1924.)

1. Highways ☾⟶90—Transferees of certificates of indebtedness of improvement district in no better position than original payees.

Purchasers of certificates of indebtedness issued by highway improvement district are in no better position than original payees, though they took in due course for valuable consideration before maturity and without notice of infirmities, unless, by recitals in certificates, district is estopped from pleading invalidity.

2. Estoppel ☾⟶62(4) — Highway district held not estopped from pleading invalidity of certificates of indebtedness.

Highway improvement district created by Road Laws Ark. 1919, No. 82, was not estopped to deny validity of certificates of indebtedness given to contractors because commissioners and landowners made no complaint until work represented by such certificates had been completed and lands benefited.

3. Municipal corporations ☾⟶933—Officers cannot bind municipality by invalid evidences of indebtedness.

Officers of public corporation cannot, even by confession of judgment, bind municipality by invalid evidences of indebtedness.

4. Highways ☾⟶113(3)—Contracts for permanent work before assessment of benefits are void and not ratifiable in Arkansas.

In Arkansas, contracts of highway district for permanent work before assessment of benefits have been made are wholly void and cannot be ratified by act of Legislature.

5. Judgment ☾⟶715(1) — Judgment in action concerning highway contract does not preclude latter action involving different issues.

When issues in former action involving validity of contract for construction of highway were not involved in latter action, latter action is not precluded by adjudication in former action.

6. Statutes ☾⟶143—Assessment deemed made in pursuance of last valid act, intervening invalid amendatory act not being considered.

Act of 1920 amending Road Laws Ark. 1919, No. 82, being invalid, assessment of benefits made in 1920 in highway improvement district created by the act of 1919 must be deemed made in pursuance of section 16 of that act, permitting annual reassessment of benefits; act of 1920 being treated as if it had never been enacted.

7. Highways ☾⟶90 — Certificates of indebtedness of improvement district held valid as having been issued after lawful reassessment of benefits.

Certificates of indebtedness issued by highway improvement district created by Road Laws Ark. 1919, No. 82, held, valid when issued after lawful reassessment of benefits, though they with amount of bond issue exceeded original assessment of benefits.

At Law. Consolidated actions by W. H. Filbert and others against the Arkansas & Missouri Highway District in Pulaski County, Arkansas. Judgment for plaintiffs.

Rose, Hemingway, Cantrell & Loughborough and Moore, Smith, Moore & Trieber, all of Little Rock, Ark., for plaintiffs.

C. T. Coleman and Carmichael & Hendricks, all of Little Rock, Ark., for defendant.

TRIEBER, District Judge. There were eleven separate suits instituted by the plaintiffs, but as the issues involved are the same

in each of the actions, they were, by consent of all the parties, consolidated and tried by the court sitting as a jury as one action; a jury having been waived by stipulation in writing.

The actions are on certificates of indebtedness issued by the defendant to the original payees, who are citizens of states other than the state of Arkansas, and by them assigned in due course to the plaintiffs, who are also citizens of states other than the state of Arkansas, of which state the defendant is a quasi corporation, created by the laws of that state.

The certificates were issued in 1920 and 1921, and are all of the same tenor, except as to the amounts, dates, maturity, numbers, and payees, and are in the form as set out in the following certificate:

"No. 1. Arkansas & Missouri Highway District, in Pulaski County, Arkansas.

"Date: June 12, 1920.

"On January first, 1921, we promise to pay to the order of Camp Construction Co. the sum of five thousand dollars ($5,000.00) with .6 per cent. interest from date until paid. This certificate is issued for work done. [Signed] Arkansas & Missouri Highway District, in Pulaski County. J. F. Faucette, Chairman, Chas. M. Connor, C. E. Moyer, Commissioners."

The answer sets up as a defense that the contracts for the work for which the certificates in controversy were issued were let to the contractors on December 11, 1919; that the benefit assessments were less than the contracts called for, the benefit assessments amounting to $663,458.50, and the certificates issued and sued on in these actions to $281,897.88, in addition to $500,000 paid out for which bonds had been issued by the district, or a total of $781,897.88.

It is also alleged in the answer that, by an act of the General Assembly of the state approved January 27, 1920, the act of 1919 (Road Laws Ark. 1919, No. 82) creating the district was amended and a new assessment of benefits was made under this amended act, which amounted to $1,851,241.91, but that this amendatory act and the assessment of benefits under it was by the Supreme Court of the state held void in its entirety. That in 1923 the General Assembly of the state again enacted a statute, amending the act of 1919 creating the district, authorizing a new assessment of benefits, which assessment aggregated $1,919,-962.20. The validity of this last assessment was by the Supreme Court sustained.

It is thereupon contended that, as the aggregate assessment of benefits under the original act of 1919 was less than the aggregate of the contracts for the construction of the highways, the certificates sued on, issued for the work performed under this assessment, are absolutely void, and plaintiffs are not entitled to recover.

By an amendment to the complaint, to which no answer was filed, and therefore must be considered as admitted, except as negatived by the agreed statement of facts, later referred to, it was alleged that at the time the contracts, for which the certificates were issued in part payment, the assessment of benefits aggregated $663,458.50 and the estimated cost of the work $578,711.10. That under the act of 1920 additional roads were to be constructed, and under this act a new assessment of benefits, aggregating $2,905,241.53, was made and approved on October 1, 1920; the contractor proceeding with the construction of the roads. The first road constructed was East Ninth street in the city of North Little Rock, but that this work was paid for in cash, and the certificates in controversy represent work done upon the main line of the district, which had been duly laid out from the beginning, and which is still a road of said district, though by the act of 1923 (Sp. Laws 1923, p. 380), passed long after the certificates in suit had been issued, it was provided that further work thereon should be limited to the building of the necessary bridges and the smoothing of the road as a dirt road. There is also a plea of estoppel by reason of the fact that the commissioners, as well as the landowners whose lands are assessed for benefits, knew of the work being done and made no complaint until after the work had been completed and the certificates sued on issued. That the certificates represent the actual cost of the construction as provided in the contracts, and the property owners have received the full benefit of the road.

The cause was submitted on an agreed statement of facts and no other testimony was introduced. Without setting out the agreed statement of facts in full, the material facts in the agreement are:

The defendant was created as a highway improvement district by Act No. 82 of the General Assembly of the state of Arkansas approved February 14, 1919.

Pursuant to the authority of said act,

plans and specifications for the proposed improvement made the estimate of cost of the proposed highway to amount to $578,-711.10, and an assessment of benefits aggregating $663,457.50, was made.

On December 11, 1919, the defendant entered into an agreement with the contractors, to whom the certificates in controversy were issued in part payment and bonds to secure the faithful performance of the work were executed by the contractors as required by the act.

By acts passed in 1920 additional roads were added to the district and a new assessment of benefits authorized. The plans for the entire work of the original as well as the additional roads involved a cost of $1,663,347.19, and an assessment of benefits was made, amounting to $2,905,241.23, which was confirmed on October 1, 1920.

The total amount of certificates of indebtedness issued by the defendant district is about $281,897.88, which is in addition to $500,000 of bonds previously issued and sold by the district, and the money used to pay the contractors. By an act of the General Assembly of 1923 the original act creating the district was amended by providing that the road should be constructed from Prothro's gin to Booker, and thence northeasterly along the Missouri Pacific Railroad to the county line, as originally planned, and that nothing more should be done on the main line over the hills and beyond the end of the concrete pavement that leads north of North Little Rock, except to complete the bridges and finish the road as a dirt road.

In pursuance of the act of 1923 the commissioners made their plans for the improvement showing an estimated cost for the work done and to be done in the sum of $1,317,-957.10, and thereupon an assessment of benefits aggregating $1,909,962 was made and confirmed on August 3, 1923. The validity of this assessment was sustained by the Supreme Court in Massey & Miller v. Arkansas & Missouri Highway District in Pulaski County, 163 Ark. 63, 259 S. W. 387. The work of construction for which the certificates of indebtedness in suit were issued consisted of work upon the main road, and the fact that the work was going on was known to substantially all the landowners in the district, and none of them interposed any objection to the making of the improvement or to the issuance of the said certificates of indebtedness. The first complaint made by the landowners was in December,

1921, seeking to hold the commissioners to a personal account for the misappropriation of the funds of the district, which was some time after all the certificates in controversy were issued in payment of the work; but this suit has not been brought to a hearing. The commissioners have never repudiated the contract, but have always recognized its existence, and the certificates sued on represent the amounts due the contractors according to the terms of the contracts. While the original assessment of benefits aggregating $663,458.50 was in force, the district entered into separate contracts with various contractors to whom the certificates of indebtedness in controversy were issued. There was also filed with the agreed facts a certified copy of the petition by the commissioners filed in the county court in August, 1923, of the assessment of benefits made, amounting to $1,919,962.99, and a certificate of the commissioners levying an annual tax of 5 per cent. of the benefit assessments, and also a certified copy of the order of the county court approving the 1919 assessment and authority granted to issue bonds in the amount of $500,000.

[1] I. Are the plaintiffs entitled to recover, regardless of the invalidity of the certificates, as claimed by their counsel, upon the ground set out in the agreed facts, that they are bona fide holders thereof, having acquired them in due course?

If these certificates had been issued by a natural person or a private corporation, and purchased in due course for a valuable consideration, before maturity, without notice of any infirmities, such holder would clearly be entitled to recover on them.

But this does not apply to a subordinate agency of a state, unless by recitals in the bonds or certificates of indebtedness it is estopped from pleading their invalidity. Buchanan v. Litchfield, 102 U. S. 278, 292, 26 L. Ed. 138; Merchants', etc., Bank v. Bergen County, 115 U. S. 384, 391, 6 S. Ct. 88, 29 L. Ed. 430; Evansville v. Dennett, 161 U. S. 434, 16 S. Ct. 613, 40 L. Ed. 760; Gunnison County Commissioners v. Rollins, 173 U. S. 255, 268, 19 S. Ct. 390, 43 L. Ed. 689. In Merchants' Bank v. Bergen County, supra, it was held, quoting from the syllabus:

"The bona fide holder, for value, of a bond of a municipal corporation, containing no recitals, apparently one of a series issued under authority of an act of the Legislature of the state, but actually issued in excess of the number of bonds authorized

by that act * * * is not protected in his holding, and cannot cast upon the county the consequences of his own mistake."

Plaintiffs are therefore in no better position than the original payees.

[2] II. The plea of estoppel relied on by the plaintiffs by reason of the fact that the commissioners as well as the landowners, whose lands are subject to the benefit assessments, saw the construction of the roads by the contractors, stood by and made no complaint until the work represented by the certificates sued on had been completed and the lands benefited, is equally without merit. A similar plea was made in Thibault v. McHaney, 119 Ark. 188, 199, 177 S. W. 877, 881, and it was held: "The landowners of the improvement district were not estopped from setting up the invalidity of the contracts made with the board of directors for permanent work. The districts were created by acts of the Legislature and the duties of its directors were defined. The act creating the district, as amended, provided for the improvement contemplated to be made without the consent of the owners of property in the district; and the proceedings under the statute were, therefore, in invitum, so far as the property owners were concerned. The property owners were not called upon to protest against the making of the proposed improvement, for they had a right to assume that the board of directors would comply with the Constitution and statute and not provide for an improvement, the cost of which would exceed the actual benefit to their property, and until the assessment of benefits had been made, they could not know that the cost of the improvement would exceed the benefits."

[3] Aside from this, officers of a public corporation cannot, even by confession of a judgment, bind the municipality for invalid evidences of indebtedness. Marsh v. Fulton County, 10 Wall. (77 U. S.) 676, 684, 19 L. Ed. 1040; Kelley v. Milan, 127 U. S. 139, 159, 8 S. Ct. 1101, 32 L. Ed. 77; Forbes Boat Line v. Board of Commissioners, 258 U. S. 338, 42 S. Ct. 325, 66 L. Ed. 647; Slayton v. Crittenden County (D. C.) 284 F. 858, 867.

As the contracts were all made at the same time, were for permanent improvements in excess of the assessments of benefits made at that time, are they wholly void, or were they by the reassessment in 1920, which was in excess of the contracts or the act of 1923 validated?

[4] In Thibault v. McHaney, supra, the Supreme Court of Arkansas held that contracts for permanent work, before the assessment of benefits had been made, are wholly void and cannot be ratified by an act of the Legislature. 119 Ark. loc. cit. 198, 177 S. W. 877. This has been followed in Pumphrey v. Road Improvement District, 125 Ark. 422, 425, 189 S. W. 59, and other cases decided by the Supreme Court of Arkansas since.

Gould v. Toland, 149 Ark. 476, 232 S. W. 434, and Elkins v. Highway District, 161 Ark. 556, 256 S. W. 835, relied on by counsel for plaintiff, are inapplicable, as what the court decided in those cases was that, while contracts for permanent work, in excess of the assessments of benefits are void, as held in the cases hereinbefore cited, contracts for preliminary expenses are valid. The contracts in the instant case were for permanent work.

III. As shown in the agreed statement of facts, in 1920 the commissioners made a reassessment of benefits amounting to $1,851,241.91, which was more than necessary, for the cost of the permanent improvements under the contracts made with the payees of these certificates, including the $500,000 bond issue.

In behalf of defendants it is claimed that this assessment was made under the amendatory act of 1920, and this act having been declared void in White v. Arkansas & Missouri Highway District, 147 Ark. 160, 227 S. W. 261, 596, that assessment was void.

Examining the opinion in that case, it will be seen that the issues in that action were of a different nature from the issues in this case. The object of that suit was to enjoin the district from contracting for the construction of certain lateral roads authorized by that act, and all that was decided was: "Giving the language [of that act] the force which its use necessarily implies, it seems to confer authority for the creation of entirely new districts; but it is ineffectual for that purpose, for the reason that there is no provision made in the statute for the assessment of benefits and the levy and collection of taxes for that purpose. The section is entirely inoperative, and is therefore void." It may be conceded, without deciding, that, if the assessment of benefits made in 1920 was solely by authority of the act of 1920, that it was void in view of the decision in the White Case, but the act of 1919 authorized the commissioners to "annually order a reassessment of benefits." Section 16 of that act provides: "The

commissioners may annually order a reassessment of the benefits; and in that event, such reassessment shall be filed, advertised and equalized as in the case of the first assessment; but if the district has borrowed money or incurred indebtedness, the total amount of the assessment of benefits shall never be diminished."

[5] By stipulation of counsel it is shown that the 1920 assessment of benefits was in strict conformity with these provisions of this section of the act of 1919. It was approved, after it had been equalized, on October 1, 1920. The first certificates of indebtedness sued on were issued on June 12, 1920, and the others monthly thereafter until April 11, 1921. As was held by the Supreme Court of Arkansas in Averitt v. Dodd, 265 S. W. 70 (opinion filed October 13, 1924): "When the issues in a former action, involving the validity of a contract for the construction of a highway, were not involved in the later action, being different in the two suits, the later action is not precluded by the adjudication in the former action."

[6] The act of 1920 having been held void, for failing to authorize an assessment of benefits, it may be treated as if it had never been enacted, and as the act of 1919 authorized new assessments of benefits annually, it must be held that the 1920 assessment was made in pursuance of section 16 of the act of 1919.

The certificates issued prior to the confirmation of the assessment of benefits of 1920 made on October 1, 1920, as shown by the complaints, in which they are set out, amounted in the aggregate to $97,000, which, added to the $500,000 of bonds issued, only makes a total of $597,000, while the assessment of benefits in 1919 aggregated $663,458.50, or $661,458.50 less than the assessment of benefits, and also less, after deducting 10 per cent. for overhead expenses.

[7] It therefore appears that the certificates of indebtedness in excess of the assessment of benefits made in 1919 were issued after the 1920 assessment had been made, equalized, and confirmed.

It is probable that, but for the reassessments in 1920, the contractors would not have continued the work, if the district was without means to pay them; but, as the reassessment provided the means of payment, they concluded that they could safely proceed with the work and be paid therefor.

In view of the fact that the agreed facts establish that none of these certificates was issued for the construction of the lateral roads, provided for by the act of 1920; that the roads were constructed in conformity with the terms of the contracts, and the district has the benefit of them; that the assessments for the payment of the entire indebtedness of the district, including all the certificates in suit, are being collected on the basis of 5 per centum annually—it would be a great injustice to deprive the holders of the certificates, and consequently the contractors, who as indorsers would be liable to their transferees, of what is justly due them for their work, while the district is enjoying the benefit of the roads constructed by them. What was said in Douglas County Commissioners v. Bolles, 94 U. S. 104, 24 L. Ed. 46, "Common honesty demands that a debt thus incurred should be paid," and in Tulare Irrigation District v. Sheppard, 184 U. S. 1, 22 S. Ct. 531, 46 L. Ed. 773, in which the facts were similar, applies with force to the instant case.

Other questions have been ably argued; but, in view of the conclusions reached by the court, it is unnecessary to pass on them.

Let there be judgment for the plaintiffs for the face of the certificates and interest.